U.S. DISTRICT COURT, NORTHERN DISTRICT OF OHIO
801 WEST SUPERIOR AVENUE
CLEVELAND, OHIO 44113
(216) 357-7142

Hayes W. Rowan
2026 W 52 St
Cleveland OH  44102
216 903 2501
hayesrowan@gmail.com

    Plaintiff in pro se

  v

Cleveland Municipal Court
1200 Ontario St
Cleveland OH 44113
(216) 664-4870
c/o eturner@cuyahogacounty.us

    Defendant

CASE NO: 1:20 CV 829

JUDGE OLIVER

MAG. JUDGE RUIZ

COMPLAINT FOR INJUNCTIVE RELIEF (FROM DUE PROCESS VIOLATIONS: SPEEDY TRIAL, EFFECTIVE COUNSEL.)

WITH REQUEST THAT THIS COURT EXPEDITE A STAY ON THE TRIAL COURT PROCEEDINGS, (19 CRB 013505, AND 17 CRB 026853,) UNTIL TESTIMONY ON VIOLATIONS IS HEARD.

Trial is set for 27 April 2020.

---

  Pursuant to the 6th Amendment guarantees protecting defendants' rights to a timely trial and effective counsel, and being advised of the penalties for perjury, Plaintiff states the following, in support of his request that this Court expedite a stay on the proceedings in the Trial Court until this Court conducts a fair hearing and rules on the due process violations in the Trial Court. (That the order to stay be expedited is expressly requested because a trial in Cleveland Municipal Court on these cases is set on the docket for 27 April 2020. (Exhibit A1, attached hereto via compact disk.)

1) Plaintiff was arraigned on 27 August 2019 in Case No., 19 CRB 013505; arraignment in 17 CRB 026853 was over two years ago. (Exhibits A2 & A3.)

2) More than seven months ago, on 28 Aug 2019, Assistant Public Defender Carlos Johnson, after conducting an intake with the Plaintiff, told him, "**You're probably the most well-prepared defendant I've ever seen.**" (Exhibit B: audio recording, at 22 min 14 sec, attached hereto via compact disk.)

3) Despite Plaintiff's considerable efforts to assist Appointed Counsel, (evident in Exhibits C - F, attached hereto.) the time to try both cases has long expired, (on 27 November 2019.) During those three months, three Defense Attorneys gave no sign of preparing in good faith for trial. Nor did any reply to Plaintiff's multiple requests that they file for dismissal, as would have been more equitable insofar as the prosecution was withholding exculpatory evidence in both cases, and dismissal during pre-trial on that basis is in accord with three Ohio Appellate decisions, cited below.

4) Appointed Counsel also neglected to file to dismiss the 2019 case pursuant to Ohio Revised Code, § 2151.421 (H) (1) (a), protecting reporters of child abuse, and it is the central issue in that case, as is considered more fully below. On 15 Sept 19, Sean Sweeney, Assistant Public Defender, ("APD," hereinafter,) emailed the Plaintiff, stating, "... this is not something that should be done <u>at this point in time,</u>" (emphasis added.) And there he left it. This is seen in Exhibit E, at pg 1, lines 12 & ff. The attorneys appointed subsequently ignored the issue as well. The case stems from an attempted assault directed at Plaintiff after he reported three incidents of child abuse in a family whose grandmother has worked for decades in the Cleveland Municipal Court.

5) Plaintiff's correspondence with the Defense Attorneys, (Exhibits C – F,) illustrates what the ACLU calls "a crisis in the public defense system." Online reviews for one of the attorneys, (Exhibit G,) reflect that crisis, too. Due examination will show that the attorneys' neglect in these cases violates the 6th Amendment Due Process guarantee to counsel, and has led to the time expiring to try both cases.

6) And so on 3 Dec 19, Plaintiff filed *pro se* requesting the Trial Court conduct a hearing on both issues and on the two grounds for pre-trial dismissal mentioned above. The motion made reference to Exhibits B - G, much of which had been previously submitted to the Trial Court.

7) Two Trial Court Judges, (the first having recused herself,) side-stepped the requested hearing, and allowed the due process violations and the other bases for dismissal to go unexamined. Both continued the cases after the time to try had expired. (Plaintiff filed for the judges' disqualification, and

though each was denied, (on grounds that probably would not hold up to examination,) both have since recused themselves.)

8) To hide the speedy trial violation, it would appear that the Trial Court dockets were falsified with journal entries reading, "Continued at Defendants request." In fact, though, Plaintiff never requested a continuance in the 2019 case, and the Trial Court will not be able to produce any document or hearing transcript showing otherwise. (In the 2017 case Plaintiff requested one continuance, almost two years ago, because of ineffective counsel, seen in part in Exhibit F.)

9) If Appointed Counsel requested a continuance, it was not for time to prepare for trial, or, more properly, to move for dismissal, and Exhibits C - F begin to show this.

10) On 11 March 2020, in front of a third Judge in the Trial Court, Plaintiff filed again for a hearing on the four grounds for dismissal. That Judge, too, circumvented a hearing, and - without allowing testimony, nor examination of evidence - ruled against the part of the motion requesting dismissal.

11) If the Trial Court record includes Plaintiff's *pro se* motions, some of which seek production of exculpatory evidence – (and those motions were never ruled on, (Exhibit H, for example) - comparison of that record with Exhibits B – J will show to this Court, (with benefit of Plaintiff's narrative,) that the Trial Court's conduct in this matter falls far short of the standard recently affirmed by the 8th District Appellate Court in State v Skerkavich, namely, that judges must act as fact-finders, and remain impartial. (State v Skerkavich, 8thDist., Cuyahoga, 2019-Ohio-4973.)

12) Examination will show that each of the judges in the cases at bar have decidedly not exercised their investigative responsibilities, nor required Counsel to exercise theirs, and in that fashion the time to try has run out.

13) "The Trial Court literally assumed the role of prosecutor," Skerkavich's attorney wrote in his appellate brief -- and that begins to describe the proceedings in the cases at bar for they have been more a perfect storm, with Defense Counsel, too, acting in a prosecutorial manner. This will be evident in court video transcripts of the hearings on 3 Dec 19 and 15 Oct 19, (not available at the time of this filing due to the state's CoVid19 shelter-at-home order.) (It is seen, too, in Exhibits C – F.)

14) The court video transcript of the 15 Oct 19 hearing will show Defense Counsel misrepresenting withheld evidence to the Trial Court; and show, on 12 Nov 2019, the Trial Court ignoring Plaintiff's request to examine that matter. The video transcript of 17 Mar 20 will reflect Counsel misrepresenting to the Court the Plaintiff's words, and the Court not allowing Plaintiff an opportunity to examine that.

15) It perhaps bears repeating, as it goes to the issue of ineffective counsel (and more,) that the Trial Court did not rule on discovery motions filed *pro se*, (Exhibit H, for example) – and thereby permitted the loss, or destruction, of exculpatory evidence.

16) One example of Counsels' misconduct in the 2019 case can be noted quickly: The case stems from the Plaintiff defending himself, (with a minimal amount of pepper spray,) from an attempted assault soon after he reported three instances of child abuse that occurred, as was mentioned, under the roof of a Cleveland Municipal Court employee. (A google search for retaliations against reporters of child abuse sets the case in its true context.) Plaintiff requested of the attorneys, as is stated in Averment 4, that they invoke ORC § 2151.421 (H) (1) (a), namely, *"a person ... shall be immune from civil or criminal liability for injury ... to another person ... as a result of ... participating in the making of reports"* [of child abuse.]

17) None moved for dismissal on that basis.

18) Jackson Katz's San Francisco TedTalk offers rare insight into the lengths society goes to silence those who tilt at abuse, and Plaintiff urges this Court to view it before ruling on this Complaint. (Plaintiff sustained childhood trauma, church-related, and he has been trained by Head Start as a Mandated Reporter.)

19) Another example goes to prove that the constitutional guarantee to counsel has been violated in these cases: Concealment of exculpatory evidence is prohibited by Ohio Criminal Rule 16, and three cases in Ohio's appellate courts affirm that it is cause for dismissing a case in pre-trial - (State v. Seals, (Cuyahoga App. 2003;) State v. Larkins, (Cuyahoga App. 2006;) State v. Harris, (Franklin App. 1998.) The prosecution is withholding exculpatory video evidence in both cases, and Defense Counsel, as is stated above, has refused to move for dismissal on that basis. In Exhibit C, on page 1, it can be seen that one attorney went so far as to deny the existence of those appellate decisions -

and then turned a deaf ear when Plaintiff-Defendant cited them. The other attorneys, too, ignored this salient issue. it can be seen in Exhibits D - F. (A neighbor's cctv video in the 2019 case would prove beyond a doubt that the Plaintiff did not commit assault, but rather acted in self-defense. In the 2017 case the complainant's cctv videos would show that the Plaintiff's actions were legally justified and not unreasonable. The videos would prove that the alleged victims committed perjury in their complaints, and Defense Counsel showed no interest in them.

20) The ACLU's warning about a crisis in the public defense system is not exaggerated.

21) And, as was stated, the Trial Court itself ignored a *pro se* motion, (Exhibit H,) to compel one of those videos

22) Plaintiff advised each Trial Court Judge in writing of appointed counsels' patterned neglect, and moved for hearings to remedy it. Each Trial Court Judge has circumvented a hearing, and ignored the delays caused by counsels' ineffectiveness. The time to try has expired because the Trial Court and Appointed Counsel have disregarded their duty to act as fact-finders and to ensure that the proceedings are based on evidence rather than on prejudice and politics.

23) This is not the first time Plaintiff has borne the brunt of that crisis in the public defense system: Exhibit I examines a case against him so mishandled it arguably cost four Clevelanders their lives.

24) Plaintiff's criminal record is an accumulation of such misrepresentation. And if that sounds delusional, may the Court know that Plaintiff can produce medical records showing that he is not delusional, and may it please the Court to be advised (or reminded) of a United States National Library of Medicine study published in 2016 showing that survivors of childhood trauma are likely to be re-victimized.[1]

25) When he was 10 years old, Plaintiff had his lungs fill with automobile exhaust as he helped rescue his mother from her suicide attempt in the garage: he and his older brother and sister returned home from school that day to find the house locked - they stood outside the garage, staring through the windows in the bay door, piecing together what was happening - and then they were unable to act, so intimidated were they by church-related authority, (as were their parents) - so robbed of initiative, they could not break a small window in the bay door and reach in and unlock it and move their mother

---

[1] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5800738/

outdoors to fresh air. A neighbor, (a quarter mile away, summoned by foot,) had to do that -- so robbed of initiative were those three children.

26) And so the Plaintiff would find a kind of redemption in Dr. King's teachings on civil disobedience and Direct Action. And he, too, would meet, on the street, (and in the courtroom,) with the equivalent of fire hoses and police dogs. (It can happen in the courts: it is why Stephen King wrote *The Green Mile*, and Harper Lee, *To Kill a Mockingbird*, and Bob Dylan, *Hurricane,* and Louise Erdrich, *The Round House*, and Melville, *Billy Budd.* It is why groups like The Innocence Project and Equal Justice Initiative are so swamped trying to extricate the wrongfully convicted from long prison terms, they cannot even consider assisting in cases like these.)

27) The Plaintiff knows so keenly trauma's lasting damage, (his mother's attempt was not the only trauma he experienced during childhood,) that when he sees someone abused, he is inclined to disregard his own clay feet and seek remedy through the proper channels -- and meeting there with deaf ears, he is pulled between either shrugging it off, as is widely recommended - or engaging in direct action, the purpose of which, as Dr. King wrote, is to so dramatize an inconvenient truth that it can no longer be met with deaf ears. Given his childhood, the Plaintiff leans toward Direct Action, and it often lands him in hot water. (Jackson Katz shows how common it is for victims, and those who speak up for them, to be silenced and blamed.)

28) May this Court keep in mind that the 2019 case stems from retaliation against the Plaintiff after he reported child abuse.

29) America has seen of late how practiced some are at the Deaf Ear act: Officials at Michigan State, and at the US Olympic Committee, ignored Larry Nassar's victims, (for years.) Penn State treated Jerry Sandusky's the same. Baltimore, 2003: Dontee Stokes was prosecuted for shooting and injuring the Catholic priest who molested him when he was a boy, and jurors acquitted him because before he picked up the gun, he had sought remedy through the proper channels - and no one could be bothered. Jurors saw through the broken systems that had failed him, and they didn't want him to pay the price for that a second time.

30) The Deaf Ear act quite often is Standard Operating Procedure in our day. And that is not good news for trauma victims.

31) Katz understands how victims get spun around. He knows why it can be difficult to talk about trauma. The Irishwoman Marie Collins, abused by a priest when she was young, - she couldn't bring herself to talk about it for a quarter of a century, and then found it useless to talk with church leaders. Christine Blasey-Ford? For 30 years she kept quiet. Michelle Knight. Released from 10 years of dungeon-like captivity, she was directly locked up again, in an assisted-living facility -- and there she was "battered with needles" as she poignantly describes it. "I was hanging in the wind," she says.

32) With no effective counsel in sight, the Plaintiff has been hanging in the wind for seven months.

33) The most concise insight into the Due Process violations in these cases is found in APD Johnson's comment, late August, 2019, to the Plaintiff, "**You're probably the most well-prepared defendant I've ever seen.**" (Exhibit A.)

34) The 2017 case? It shows that the Cleveland Animal Protective League deems a person disabled by trauma of less worth than a badly trained dog habitually behaving outside the law, (Exhibit D, pg 3, lines 20 & ff.) It shows that a nuisance dog, persistently in violation of the law, (frightening pedestrians on a public sidewalk, (toddlers and their moms; teens; postal carriers; UPS workers; the walking wounded) -- that such a dog has more legal standing than a trauma survivor whom Melville could have described in *Billy Budd* where he writes: *"A ploughman of troubled waters, life-long contending with the intractable elements, there was nothing this honest soul loved better than simple peace and quiet."*

35) In Exhibit J are four letters of reference attesting to the Plaintiff's honesty.

36) The Ohio Supreme Court discourages the handling of cases such as is described herein, because it "seriously erodes the basic fairness, integrity and public reputation of the judicial process," (Goldfuss v. Davidson (1997) (79 Ohio St.3d 116, 122-123, 1997 Ohio 401, 679 N.E.2d 1099, at ¶ 5.)

Therefore, because the docket, on the date of service of this filing, shows that these cases are set for trial on 27 April 20 in Cleveland Municipal Court, Plaintiff requests that this Court, on or before Friday, 24 April 2020, stay the proceedings in the Trial Court, and schedule case management to ensure

that this matter is resolved in keeping with federal law, and in a way that will affirm the basic fairness, integrity and public reputation of the judicial process. And may court costs be assigned the Defendant.

Respectfully submitted,

/s/ Hayes Rowan

Hayes W. Rowan
2026 W 52nd St.
Cleveland OH  44102
216 903 5201
hayesrowan@gmail.com

Signer declares under penalty of perjury that each averment in this Complaint is true.

Enclosed: PROPOSED JUDICIAL ORDER TO STAY PROCEEDINGS
AO239 Application
Civil Cover Sheet
Proposed Judicial Order to stay proceedings in the Trial Court;
Motion to permit electronic case filing;
Motion and proposed order to permit e-filing;
Copy of page 1 of the Complaint for date/stamp and return to Plaintiff;
SASE.

Attached, by Compact Disk:

Exhibit A – DOCKET EXCERPTS: DATE OF ARRAIGNMENTS; AND TRIAL DATE SCHEDULED
Exhibit B – APD CARLOS JOHNSON 8 28 19 @ 22.14 & ff
Exhibit C – EMAILS TO & FROM ATTY JAMIESON
Exhibit D – EMAILS TO APD LAUREN ESARCO
Exhibit E – EMAILS TO APD SWEENEY 19 CRB 013505
Exhibit F -  EMAILS TO APD HEFFERNAN & APL REMEDY
Exhibit G – ATTY NANCY JAMIESON - REVIEWS – CLIPS
Exhibit H -  FILED MOT COMPEL BORALLY AUDIO & GIBBONS VIDEOS - date-stamped
Exhibit I -  FALSE ALARMS REVISITED - 1727 W 32
Exhibit J -  FOUR LETTERS OF REFERENCE ATTESTING TO THE PLAINTIFF'S HONESTY

CERT OF SERVICE

Signor above affirms service by USPS, next day, on 16 April 2020, to the U.S. District Court, Northern District of Ohio.